UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW W. ROSE,

         Plaintiff,

                                  No. 11-10582

-vs-

                                  Magistrate Judge R. Steven Whalen

CHELSEA AREA FIRE AUTHORITY,
ET AL.,

         Defendants.

_____ /

## OPINION AND ORDER DENYING SUMMARY JUDGMENT

       Before the Court is Defendants' Motion for Summary Judgment [Doc. #33]. For the reasons discussed below, the Motion is DENIED.

### I.    FACTS

       Plaintiff Matthew W. Rose was, at the time of the events alleged in the complaint, and continues to be licensed by the State of Michigan as a paramedic and emergency medical technician ("EMT") specialist. He became employed full-time as a firefighter with the Chelsea Area Fire Authority ("CAFA") on August 7, 2008. In May or June of 2010, CAFA received a federal grant that enabled it to hire six temporary full-time firefighters, for a period of no greater than three years. At that time, Plaintiff and two other firefighters were given the job title of "Lieutenant." There were three Captains–Sam Norton, Chris Smyth, and Augustine Syrovy–who supervised the three scheduled work shifts.

       Plaintiff alleges that he reported to Captain Norton, but on or about July 18, 2010, he assisted on the shift that was supervised by Captain Smyth on a run involving the victim of a gunshot wound, who was initially being driven in a private vehicle. He states

that CAFA dispatched two trucks, and Huron Valley Ambulance ("HVA") dispatched an ambulance. CAFA intercepted the private vehicle while HVA was still en route. Plaintiff alleges that Captain Smyth ordered him and other firefighters in his truck to transport the victim to Chelsea Community Hospital, even though the victim had not been assessed as to vital signs and whether or not she was stable. Plaintiff states that what Smyth ordered was against standard protocol for trauma cases.  He states that the fire engine used to transport the victim was not designed for patient transport. However, he alleges, Smyth ordered him to transport the victim over his objections, even though the ambulance was at that point very close to the scene.

Plaintiff alleges that when he arrived at Chelsea Community Hospital, the victim was transferred to the HVA ambulance for transport to the University of Michigan Hospital, the closest Level 1 Trauma Center.  Plaintiff states that at Chelsea Community Hospital, he was upset about what he believed was a violation of the law regarding the transport of the victim from the scene, and that a nurse at the Hospital as well as HVA's ambulance technicians also objected to CAFA' transport of the victim. Plaintiff told the nurse that it was the Captain's decision to transport the victim, and when the ambulance technicians asked why the violation occurred, Plaintiff told them he would speak to his Chief.

Plaintiff states in his complaint that on July 18, 2010, he requested a meeting with Chief Jim Payeur, who agreed to meet with him the following Monday. On the same day, Plaintiff also wrote a memo apologizing for voicing his concerns abut the violation of the law while he was at the Chelsea Hospital.  On July 20, 2010, he met with Chief Payeur, and expressed his concerns about the violation of protocols for patient transport. Plaintiff alleges that CAFA conducted an investigation into the incident, but that rather than

-2-

concentrating on the violation of protocols, the report mainly criticized him for expressing his concern to hospital personnel and the ambulance technicians.

On or about November 9, 2010, Payeur wrote a memo directed to Captain Norton and the Plaintiff, in which the Plaintiff was strongly criticized for "speaking out in pubic against the actions taken by Captain Smyth." The memo stated that "[p]rofessionalism, responsibility and maturity would follow the chain of command and in a manner that does not embarrass the department." On the same day, Payeur switched Plaintiff to the third shift, reporting directly to Captain Smyth. He alleges that on November 20, 2010, Payeur demoted him from Lieutenant to "Firefighter Level," and imposed a probationary period. Plaintiff states that although the Lieutenant position had not involved an increase in pay or essential duties, Payeur returned him to a lower paid position under the federal grant, with the potential that the position would be terminated when the grant funds were exhausted.  Plaintiff states that Payeur told him he had been "organizationally fired," and that he had never seen anyone returned to his original position after being organizationally fired.  Plaintiff states that this left him with the reasonable belief that he would never advance within CAFA.  He claims that he was therefore constructively discharged, and on November 21, 2010, he resigned his employment with CAFA went to work full-time with HVA.

Defendants state that following the July incident, Plaintiff was "officially" promoted to Lieutenant in August of 2010. Chief Payeur testified at his deposition that he in fact gave Plaintiff a memo on November 9, 2010, expressing concern about Plaintiff's inability to provide effective leadership and the lack of confidence on the part of the firefighters under his direction. Payeur stated that Plaintiff lost credibility due to his public comments in July. On November 20, 2010, Payeur issued another memo advising

Plaintiff that he was being returned to the rank of firefighter and that he would remain on the third shift, under Smyth's supervision.

Plaintiff brings a claim under 42 U.S.C. § 1983 for violation of his First Amendment rights (Count I), and a claim for a state law violation of Michigan's Whistleblowers' Protection Act, M.C.L. § 15.361, *et seq*. (Count II).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III.   DISCUSSION

#### A.   First Amendment Violation

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment rights when he criticized what he saw as a serious violation of protocols that could have adversely affected a trauma victim. In a retaliation claim brought under § 1983, a plaintiff must establish the following elements:

> "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct."

*Fritz v. Charter Township of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010), citing *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005).

In the case of a public employee, speech is given First Amendment protection "if (1) the speech addresses a matter of public concern, and (2) the employer has no overriding state interest in efficient public service that would be undermined by the speech." *Meyers v. City of Cincinnati*, 934 F.2d 726 (1991); *Rankin v. McPherson*, 483 U.S. 378, 384 (1987). For purposes of their motion, Defendants concede that Plaintiff's comments addressed matters of public concern, and they do not argue that CAFA had an overriding interest in efficient public service. In addition, it is clear that Plaintiff suffered an adverse action when he was demoted in November of 2010, with a significant loss in pay and opportunity for advancement. Rather, Defendants argue that "CAFA took no adverse action...against Rose as a result of [his] comments." *Defendant's Brief*, at 11. In other words, Defendants rely on the third prong of the *Fritz* analysis, which requires that "the adverse action was motivated at least in part by the plaintiff's protected conduct."

Defendants' argument is premised on two suppositions. First, although Plaintiff was deemed to be a Lieutenant in May or June of 2010, he was "officially" promoted to that position in August, after the incident involving the gunshot victim and after Plaintiff's conduct and complaints at the Chelsea Hospital and later to Chief Payeur were well known. Thus, argue Defendants, if they were of a mind to retaliate, they would not have given Plaintiff the official promotion in August. Secondly, Defendants argue that Plaintiff was demoted in November not because of his comments at the Hospital, but because he lacked leadership skills and did not have the confidence of the firefighters that he supervised.

Nevertheless, the evidence shows questions of material fact as to whether Plaintiff's exercise of his First Amendment rights played a part in his demotion and alleged constructive discharge. In his memo of July 20, 2010, Payeur stated,

> "Spoke to Rose told him this was conduct unbecoming an officer and will not be tolerated. He said he wrote a memo saying he was sorry. *I said the things said–can not be taken away*." (Emphasis added).

In other words, Payeur stated in this memo that Plaintiff's conduct on July 18 would follow him throughout his tenure with CAFA. If the effect and import of Plaintiff's constitutionally protected comments "can not be taken away" in July, they can not be taken away in November. This supports an inference that Plaintiff's comments played a part in Payeur's decision to demote him.

In addition, Payeur's memo of November 9, 2010, less than two weeks before Plaintiff was demoted, specifically referred to Plaintiff's statements at the Chelsea Hospital. The fifth bullet point of Payeur's memo stated:

> "Matt, you need to know that a lack of confidence in you on the part of your leadership, skills and abilities had been brought to my attention by several members of this department. *There is a feeling out there that you do not have their backs. You lost a lot of credibility over your actions on the*

-6-

*Engine Transport, speaking out in public against the actions taken by Captain Smyth*. Professionalism, responsibility and maturity would follow the chain of command *and in a manner that does not embarrass the department*." (Emphasis added).

Finally, in his deposition, Payeur conceded that the Plaintiff's statements at the hospital factored into his decision to demote him, albeit that it was "[j]ust one small piece." Whether it was a "small piece" might be questionable in light of Payeur's November 9th memo, but in any event, it is only necessary that the adverse action taken against the Plaintiff was "motivated at least in part" by his protected conduct. *Fritz, supra*.

Plaintiff's demotion was a sufficiently adverse action in and of itself to support his First Amendment retaliation claim. In addition, he may base the claim on a theory of constructive discharge. In *Logan v. Denny's, Inc.,* 259 F.3d 558, 568-69 (6th Cir.2001), the Sixth Circuit held that "[t]o demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer ... deliberately create[d] intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." *Saroli v. Automation & Modular Components, Inc.,* 405 F.3d 446, 451 (6th Cir.2005). *Logan* also adopted the Fifth Circuit's approach to determining whether the first prong of the constructive discharge inquiry has been met:

> "Whether a reasonable person would have [felt] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [male] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status."

*Logan,* 259 F.3d at 569 (quoting *Brown v. Bunge Corp.,* 207 F.3d 776, 782 (5th Cir.2000)).

Here, there is evidence that Plaintiff was demoted from Lieutenant to firefighter, suffered a loss of pay and responsibility, and was told in effect that he would have no realistic opportunity for advancement at CAFA. This is factually sufficient to support both prongs of the constructive discharge inquiry.

For these reasons, Defendants are not entitled to summary judgment on Plaintiff's § 1983 First Amendment claim.

## B.   Whistleblowers' Protection Act

Claims under the Whistleblowers' Protection Act ("WPA"), M.C.L. § 15.361, *et seq.*, are analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Roulston v. Tendercare, Inc.*, 239 Mich.App. 270, 280-81, 608 N.W.2d 525 (2000).  First, Plaintiff must establish a *prima facie* case. The above discussion finding evidence that Plaintiff's demotion was causally related to his exercise of his First Amendment right suffices to support a *prima facie* case under the WPA.[1]

The Defendants have produced evidence, in the form of negative critiques of Plaintiff's performance apart from his complaints about CAFA's breach of protocols, that there was a non-retaliatory basis for his demotion. However, Plaintiff has produced

---

[1] To the extent that Defendants claim that the WPA is inapplicable because Plaintiff made his complaints to his own employer, that argument was clearly rejected in In *Brown v. Mayor of Detroit,* 478 Mich. 589, 734 N.W.2d 514 (2007). *See also Talhelm v. ABF Freight Systems, Inc.*, 364 Fed.Appx. 176, 182-83 (6th Cir. 2010)(under the WPA, "[i]t does not matter if the public body to which the suspected violationswere reported was also the employee's employer")(citing *Brown*).

In addition, while the Chelsea Hospital and HVA are not "public bodies" for purposes of the WPA, Plaintiff also made a complaint to CAFA, which is a public body, and was immediately rebuked by Defendant Payeur.

-8-

sufficient evidence, as discussed in the previous section, that this reason was but a pretext, and that the actual reason was his complaint.

The Plaintiff has established sufficient facts to overcome summary judgment on his WPA claim.

## IV.   CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment [Doc. #33] is DENIED.

IT IS SO ORDERED.


Date: September 30, 2012                 s/ R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on September 30, 2013, electronically and/or by U.S. Mail.

                                         s/Michael Williams
                                         Case Manager for the
                                         Honorable R. Steven Whalen